FILED & ENTERED

APR 08 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:  1604 Sunset Plaza, LLC, Debtor and Debtor-in-Possession. | Case No.: 2:21-bk-19157-ER<br>Chapter: 11<br><br>**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>**[RELATES TO DOC. NOS. 53 AND 56]**<br><br>Date:      March 28, 2022<br>Time:      10:00 a.m.<br>Location:  Courtroom 1568<br>           Roybal Federal Building<br>           255 East Temple Street<br>           Los Angeles, CA 90012 |

At the above-captioned date and time, the Court conducted hearings on motions for relief from the automatic stay (the "RFS Motions") filed by Preferred Bank ("PB") and East West Bank ("EWB").[1] For the reasons set forth below, the Court will grant stay relief under

---

[1] The Court considered the following papers in adjudicating the RFS Motions:
1) Motion for Relief from the Automatic Stay Under § 362 [filed by Preferred Bank] [Doc. No. 56]
    a) Memorandum of Points and Authorities in Support of Motion for Relief from Stay [Doc. No. 56-1]
    b) Supplemental Declaration of Robert J. Kosof in Support of Motion for Relief from the Automatic Stay [Doc. No. 56-2]
2) Motion for Relief from the Automatic Stay Under § 362 [filed by East West Bank] [Doc. No. 53]

§ 362(d)(2) if the Debtor fails to both (1) obtain an order authorizing the sale of the property located at 1604 Sunset Plaza Drive, Los Angeles, CA 90069 (the "1604 Sunset Property") by no later than **June 15, 2022** and (2) close the sale by no later than **July 15, 2022**.

## I. Facts and Summary of Pleadings
### A. Background

On December 9, 2021 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition. Annette Rubin ("Annette")[2] is the Debtor's president. Corporate Ownership Statement Pursuant to FRBP 1007(a)(1) and 7007.1, and LBR 1007-4 [Doc. No. 19, Case No. 2:21-bk-19157-ER]. DLJJ & Associates, LLC ("DLJJ") is the Debtor's manager. Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy at ¶ 28 [Doc. No. 19, Case No. 2:21-bk-19157-ER]. The Stuart and Annette Rubin Family Trust Under Agreement Dated November 3, 2003 (the "Rubin Trust") holds a 100% interest in the Debtor. *Id.* Annette, in her capacity as Trustee of the Rubin Trust, signed the Debtor's Schedules and Statement of Financial Affairs. End Notes Regarding Schedules of Assets and Liabilities and Statement of Financial Affairs [Doc. No. 19, Case No. 2:21-bk-19157-ER].

On December 10, 2021, the Debtor filed a *Complaint for Injunctive Relief* [Adv. Doc. No. 1, Case No. 2:21-ap-01245-ER] (the "Complaint") against PB and Lenders Foreclosure Services ("Lenders," and together with PB, the "Defendants"). The Complaint sought preliminary and permanent injunctions preventing Defendants from foreclosing upon residential property located at 4347 Marina Drive, Santa Barbara, CA (the "Marina Property").

On December 13, 2021, the Debtor filed an emergency motion (the "Emergency Motion") for issuance of a preliminary injunction staying the December 15, 2021 foreclosure sale of the Marina Property. The Debtor has no interest in the Marina Property, but is a co-obligor on a business loan (the "Loan") issued to A. Stuart Rubin ("Stuart") by PB on August 21, 2017. The Loan is also secured by the 1604 Sunset Property, which *is* property of the Debtor's estate. The Emergency Motion was motivated by the Debtor's concern that optimal value of the Marina Property would not be realized at a foreclosure sale, which in turn would mean that the Debtor's obligation on the Loan would be greater than would otherwise be the case.

The Court conducted a hearing on the Emergency Motion on December 14, 2021. On that same date, the Court issued a Memorandum of Decision [Doc. No. 16, Adv. No. 2:21-ap-01245-ER] and accompanying order [Doc. No. 17, Adv. No. 2:21-ap-01245-ER] denying the Emergency Motion. The Court found that the Debtor had failed to show that it would be able to

---

      a)   Appendix of Unpublished Opinions Cited in Memorandum in Support of East West Bank's Motion for Relief from Stay and Joinder in the Motion for Relief from Stay filed by Preferred Bank [Doc. No. 54]
3) Omnibus Opposition to Motions for Relief from the Automatic Stay Filed by East West Bank and Preferred Bank [Doc. No. 63]
4) Reply to Omnibus Opposition to Motions for Relief from the Automatic Stay [filed by Preferred Bank] [Doc. No. 64]
5) East West Bank's Reply to Debtor's Opposition to East West Bank's Motion for Relief from Stay [Doc. No. 65]

[2] A given name is used to distinguish Annette Rubin from Stuart Rubin. No disrespect is intended.

expeditiously sell the Marina Property outside of bankruptcy because multiple obstacles stood in the way of a prompt sale. On January 18, 2022, the Debtor voluntarily dismissed the Complaint.

On December 14, 2021 at 11:19 p.m.—approximately six hours after the Court issued the Memorandum of Decision and Order denying the Emergency Motion—DLJJ filed a voluntary Chapter 11 petition (Case No. 2:21-bk-19229-ER). Annette is the sole member and manager of DLJJ. Unanimous Written Consent of Manager of DLJJ & Associates, LLC [Doc. No. 1, Case No. 2:21-bk-19229-ER]. In its schedules, DLJJ claimed to hold a 10% ownership interest in the Marina Property, based upon a Grant Deed recorded by Annette on December 13, 2021 at 10:30 a.m. (the "Dec. 2021 Grant Deed"), which purported to transfer a 10% interest in the Marina Property from Annette to DLJJ.

On January 12, 2022, upon the motion of PB, the Court found that DLJJ had sought bankruptcy protection in bad faith, and dismissed DLJJ's case with a 180-day bar against re-filing. Doc. Nos. 74–75, Case No. 2:21-bk-19229-ER. On that same date, the Court issued an order requiring DLJJ to show cause why the Court should not enter an order granting *in rem* relief as to the Marina Property pursuant to § 362(d)(4). Doc. No. 77, Case No. 2:21-bk-19229-ER. On February 16, 2022, the Court entered an order finding that the filing of DLJJ's petition was part of a scheme to delay, hinder, and defraud creditors that involved both (a) the transfer of a fractional interest in the Marina Property without the consent of secured creditors or court approval and (b) multiple bankruptcy cases affecting the Marina Property. Doc. No. 106, Case No. 2:21-bk-19229-ER.

On January 13, 2022, PB conducted a non-judicial foreclosure sale of the Marina Property. PB was the winning bidder at the foreclosure sale, and acquired the Marina Property subject to first and second deeds of trust. Supplemental Declaration of Robert J. Kosof in Support of Motion for Relief from the Automatic Stay [Doc. No. 65, Case No. 2:21-bk-19157-ER] (the "Kosof Decl.") at ¶ 34. Under Cal. Civ. Code § 2924(m), eligible bidders may submit a declaration stating that they intend to submit a higher bid within fifteen days of the foreclosure sale. Such eligible bidders then have 45 days from the date of the foreclosure sale to pay the foreclosure trustee the amount of the higher bid. The 45-day period expired on February 28, 2022, and no higher bids were submitted. *Id.* PB has now received a Trustee's Deed Upon Sale to the Marina Property. *Id.*

On February 2, 2022, the Debtor filed an application to employ Hilton & Hyland as real estate brokers to market the 1604 Sunset Property. Doc. No. 30, Case No. 2:21-bk-19157-ER (the "Broker Employment Application"). The Broker Employment Application is opposed by PB and East West Bank ("EWB"). A hearing on the Broker Employment Application is set for April 12, 2022.

The Debtor's Schedules value the 1604 Sunset Property at $3.2 million. The 1604 Sunset Plaza Property is encumbered by a First Deed of Trust in favor of EWB (the "First DOT") and a Second Deed of Trust in favor of PB (the "Second DOT"). EWB asserts that it is owed approximately $1.24 million under the First DOT; PB asserts that it is owed approximately $8.95 million under the Second DOT.

//
//
//
//
//
//

**B. Summary of Papers Filed in Connection with the Motions for Relief from the Automatic Stay**

PB seeks stay relief with respect to the 1604 Sunset Property, pursuant to § 362(d)(1), (d)(2), and (d)(4). The principal arguments advanced by PB in support of stay relief are as follows:

1) The Debtor has no realistic chance of either reorganizing or conducting a § 363 sale of the 1604 Sunset Property because the 1604 Sunset Property is overencumbered.
2) The Debtor's bankruptcy petition was filed in bad faith. "What is … clear is that from the very start, [Sunset Plaza and DLJJ] and the Rubins always viewed these two bankruptcy cases as extensions of each other and of themselves, with their ability to oversee and direct events to fit their desired outcome of continuing to frustrate [PB's] legitimate right to foreclosure on its collateral to reduce the substantial amount it was owed." Doc. No. 56, Case No. 2:21-bk-19157-ER, at p. 13. For example, after the DLJJ bankruptcy case was dismissed, PB took possession of the Marina Property by changing the locks and installing a chain on the entrance gate to the driveway. On February 1, 2022, a patrol service hired by PB to monitor the Marina Property discovered that the locks had been broken and that the Marina Property was being occupied by individuals employed by CRG & Associates ("CRG"). CRG is an entity affiliated with Sunset Plaza, DLJJ, and the Rubins. On February 2, 2022, PB's patrol service discovered that CRG had hired an armed security service, Black Badge Security, "for the specific purpose of reporting activity on the [Marina Property] and the whereabouts of [PB's] security company. In subsequent trips to the [Marina Property] over the past month, [PB's] security has found armed guards are still there." Kosof Decl. at ¶ 37.

EWB also seeks stay relief pursuant to § 362(d)(1), (d)(2), and (d)(4). Like PB, EWB argues that the Debtor's bankruptcy petition was filed in bad faith.

In opposition to the Motions, the Debtor represents that it is "prepared to move quickly on a 60-day sale timeline … if the Court agrees to deny or continue the Motions." Doc. No. 63, Case No. 2:21-bk-19157-ER at p. 3.

## II. Findings of Fact and Conclusions of Law
### A. Stay Relief Under § 362(d)(4) is Not Warranted

The underlying premise of PB's assertion that stay relief is warranted under § 362(d)(4) on bad-faith grounds is that the conduct of Annette, DLJJ, and other non-Debtor entities should be imputed to the Debtor. According to PB:

> [PB] submits that the 1604 Sunset and DLJJ cases both clearly were intended to and did affect the 1604 Sunset Plaza property as well, as all decisions taken in each case were made and coordinated by Annette Rubin, a Manager of both DLJJ and 1604 Sunset, in an elaborate scheme to hinder, delay and defraud [PB] and abuse the judicial resources of this Court and the entire bankruptcy system.
>
> Because of these closely coordinated efforts, all spearheaded by Annette Rubin, and the effect that they had on the 1604 Sunset Property, [PB] is also seeking in rem relief with respect to this Property in any other case under Title 11 purporting to affect the 1604 Sunset Property filed not later than two years after the date of the entry of an Order providing for such relief.

> There can be no doubt as to exactly what Annette Rubin's motives and intentions were when she commenced this bankruptcy case (and the DLJJ case), and that these motives are completely at odds with the purpose and intent of the Bankruptcy Code, resulting in yet another bad faith filing for which she bears full responsibility. These motives must not be allowed to infiltrate the filing of cases before this or any other Bankruptcy Court, and a clear message must be sent. Relief from stay pursuant to 11 U.S.C. § 362(d)(4)(B) must be granted, as it is appropriate under the circumstances and will send a message to those who seek to come before this Court with improper intentions.

Doc. No. 56-1, Case No. 2:21-bk-19157-ER at pp. 14–15.

 The Debtor is a California limited liability corporation. Under California law, "a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538, 99 Cal. Rptr. 2d 824, 836 (2000). Remedies that disregard a corporation's separate legal existence, such as the alter-ego doctrine, are "extreme" and must be "sparingly used." *Id.* at 539.

 PB has failed to demonstrate that facts or circumstances exist that warrant imputing the conduct of DLJJ, CRG, or other non-Debtor entities to the Debtor. The Debtor has not been substantively consolidated with DLJJ or CRG. To conclude that the Debtor has acted in bad faith, based upon the conduct of DLJJ or CRG, would be to disregard the corporate form. The fact that Annette is the president of the Debtor as well as the sole member of DLJJ, or that DLJJ is the Debtor's manager, does not change this result. Overlap in the management of corporations is common and does not, standing alone, warrant disregarding a corporation's separate legal existence.

 For the same reason, whatever may or may not have occurred with respect to PB's attempts to enforce its rights with respect to the Marina Property has no relevance to the instant case, and is not considered by the Court. The Marina Property is **not** property of the Debtor's estate. Having dismissed DLJJ's bankruptcy petition and granted *in rem* relief as to the Marina Property, the Court no longer has any jurisdiction over the Marina Property. Accordingly, it is not appropriate for the Court to take into consideration actions taken with respect to the Marina Property when adjudicating disputed issues in the Debtor's case.

 PB contends that it is entitled to stay relief under § 362(d)(4)(B), on the ground that the filing of the Debtor's petition was part of a scheme to delay, hinder, or defraud creditors that involved multiple bankruptcy cases affecting the 1604 Sunset Property. PB's theory is that DLJJ's petition counts as a bankruptcy case affecting the 1604 Sunset Property for purposes of § 362(d)(4)(B), because DLJJ's petition affected the disposition of the Marina Property, which in turn affected the Debtor's liability as a co-obligor on the Loan.

 Section 362(d)(4) was added to the Bankruptcy Code in 2005 to provide secured creditors relief in situations where debtors "resorted to filing tactical, serial bankruptcy cases to prevent creditors from enforcing liens against their property." *Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*, 499 B.R. 698 (B.A.P. 9th Cir. 2013). DLJJ did not schedule any interest in the 1604 Sunset Property. With respect to the 1604 Sunset Property, DLJJ's petition does not qualify as the kind of "tactical, serial bankruptcy case[]" warranting stay relief under § 362(d)(4)(B).

**B. The Court Will Grant Stay Relief Under § 362(d)(2) if the Debtor Fails to Both (1) Obtain an Order Authorizing the Sale of the 1604 Sunset Property by June 15, 2022 and (2) Close the Sale by July 15, 2022**

Under § 362(d)(2), the Court is required to grant stay relief if the debtor lacks equity in the property and the property is not essential to an effective reorganization that is in prospect. As explained by the U.S. Supreme Court:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." *See* § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that *is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375–76 (1988) (emphasis in original).

There is no dispute that the Debtor has no equity in the 1604 Sunset Property. The question then becomes whether the 1604 Sunset Property is necessary to an effective reorganization that is in prospect.

The Debtor has made a sufficient showing with respect to its ability to sell the 1604 Sunset Property, and then distribute the sale proceeds to EWB and PB through a Plan, to warrant maintaining the automatic stay for a brief period. The Court will provide the Debtor until **June 15, 2022** to obtain an order authorizing the sale of the 1604 Sunset Property. The sale of the 1604 Sunset Property must close by no later than **July 15, 2022**. If the Debtor fails to meet either of these deadlines, the Court will grant stay relief under § 362(d)(2) without further notice or hearing. If the deadlines are not met, PB and EWB shall submit declarations so attesting, accompanied by proposed orders lifting the automatic stay.

The Debtor has sought authorization to employ Hilton & Hyland to market the 1604 Sunset Property. Hilton & Hyland specializes in selling high-end real estate in Southern California. Gary Gold, a broker at Hilton & Hyland, sold the Chartwell Estate for $150 million. Declaration of Gary Gold [Doc. No. 30, Case No. 2:21-bk-19157-ER] at ¶ 5. Obviously, the Debtor will be required to satisfy one or more of the requirements set forth in § 363(f) in order to sell the 1604 Sunset Property, which may be difficult given the lack of equity. However, it would be premature for the Court to cut off the Debtor's ability to attempt to sell the 1604 Sunset Property and then distribute the sale proceeds to EWB and PB through a Plan.

**C. Stay Relief Under § 362(d)(1) is Not Warranted**

PB argues that the stay should be lifted under § 362(d)(1), on the ground that the Debtor's lack of equity in the 1604 Sunset Property means that PB is not adequately protected.

A secured creditor's interest is adequately protected if the value of its collateral is not declining; the secured creditor is not entitled to payment to compensate for its inability to foreclose upon the collateral during bankruptcy proceedings. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988).

PB has presented no evidence establishing that the 1604 Sunset Property is declining in value. Therefore, PB has not established that it is entitled to stay relief based upon a lack of adequate protection. As set forth in *Timbers*, an undersecured creditor "is not entitled to interest on its collateral during the stay to assure adequate protection under 11 U.S.C. § 362(d)(1)." *Id.* at 382.

PB's security interest in the 1604 Sunset Property is junior to EWB's security interest. To the extent that EWB's claim increases through the accrual of interest, the value of PB's interest in the 1604 Sunset Property is decreasing. PB asserts that it is entitled to adequate protection payments to offset this decrease.

Some courts outside the Ninth Circuit have found that adequate protection payments are necessary under these circumstances. For example, the Eleventh Circuit has reached this conclusion:

> [T]he bankruptcy court found that the debtor had no equity in the property. As a result, in this case, [the junior lienholder's] interest in the property is diminished each month to the extent of the interest accrued against the property on the [senior lienholder's] indebtedness—approximately $69,417.67 per month. Therefore, the bankruptcy court concluded:
>
> > [B]ecause there is no equity cushion to adequately protect [the junior lienholder's] interest in the property, [the junior lienholder] is entitled to be provided with the adequate protection provisions of the June 22, Order, including the monthly payments of the full amount of [the junior lienholder's] debt service *to prevent the undersecured position from further eroding.* Such periodic payments as adequate protection are authorized by 11 U.S.C. § 361(1) *to prevent AEV's interest in the property from further decreasing in value.* (Emphasis added.)
>
> The court went on to explain that the payments are not compensation for the "use value" of the collateral or for lost opportunity costs resulting from the delay in foreclosure caused by the stay, which a creditor in [the junior lienholder's] position would not be entitled to receive under the holding of *Timbers*.
>
> The bankruptcy court expressly addressed the limitations placed on adequate protection payments to undersecured creditors. In *Timbers,* the Supreme Court noted that an interest in property "is not adequately protected if the security is depreciating during the term of the stay." 484 U.S. at 380, 108 S.Ct. at 635. Nothing in *Timbers* would prevent adequate protection payments from being made to compensate junior undersecured creditors for the decline in value of the security interest due to the increase in the claim of the senior secured creditor for accruing interest. Payments, such as the ones ordered in this case, are not compensation for the delay in foreclosure or interest on the junior creditor's claim but, in fact, are compensation for an actual erosion in the value of the junior creditor's secured claim. Accordingly, the court finds that the bankruptcy court correctly ordered adequate protection payments in this case in the amount of $69,417.67.

*Ridgemont Apartment Assocs., Ltd. v. Atlanta Eng. Vill., Ltd.*, 110 B.R. 77, 82–83 (N.D. Ga.), *aff'd sub nom. Ridgemont Apts. v. Atlanta Eng.*, 890 F.2d 1166 (11th Cir. 1989).

The Eleventh Circuit's position has been rejected by the leading treatise, *Collier on Bankruptcy*:

> One question that arises is whether, if the collateral is not declining in value, the second lienor is entitled to adequate protection because the amount of the senior claim is increasing regularly by the accrual of interest permitted under section 506(b). This relates to the question of what exactly is being protected. The Supreme Court in *Timbers of Inwood Forest* held that the creditor was entitled to protection of the value of the collateral, not of other rights that the creditor might have. This suggests that a junior lien holder should not be entitled to compensation for the decrease in its interest caused by an increase in the senior creditor's interest. Indeed, the junior creditor subjected itself to the senior interest and was always in the position of seeing the value of its interest decrease as the senior obligation increased. Without serious analysis, a number of lower courts have held to the contrary, however. These courts have looked not to the value of the collateral, but rather to the value of the creditor's interest in that collateral. Under these cases, the junior creditor is entitled to perpetuation of its ratio of collateral to debt, contrary to *Timbers*.

Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.07 (16th rev'd ed. 2022) (footnotes omitted).

PB has not cited, and the Court has been unable to locate, any cases decided within the Ninth Circuit adopting the Eleventh Circuit's reasoning. The Court finds the reasoning set forth in *Collier on Bankruptcy* to be more persuasive, and declines to follow the Eleventh Circuit. PB is not entitled to adequate protection payments because no evidence has been presented establishing that the 1604 Sunset Property is declining in value. The fact that PB's *interest* in the 1604 Sunset Property may be decreasing as a result of the increase in EWB's claim does not change this result.

EWB is not entitled to adequate protection payments because it is protected by a substantial equity cushion in the 1604 Sunset Property. EWB's claim against the 1604 Sunset Property is approximately $1.24 million; the property is worth approximately $3.2 million. EWB is protected by an equity cushion of approximately 53.3%, well in excess of the 20% equity cushion that has been found to provide adequate protection. *See, e.g.*, *Downey Sav. & Loan Ass'n v. Helionetics, Inc. (In re Helionetics, Inc.)*, 70 B.R. 433, 440 (Bankr. C.D. Cal. 1987) (holding that a 20.4% equity cushion was sufficient to protect the secured creditor's interest in its collateral).

Finally, PB and EWB assert that the Debtor's alleged bad faith constitutes "cause" for lifting the stay under § 362(d)(1). For the reasons set forth in Section II.A., above, Movants have not established that the Debtor acted in bad faith.

## III. Conclusion

Based upon the foregoing, the Court will grant stay relief under § 362(d)(2) if the Debtor fails to both (1) obtain an order authorizing the sale of the 1604 Sunset Property by no later than **June 15, 2022** and (2) close the sale by no later than **July 15, 2022**. If the Debtor fails to meet either of these deadlines, PB and EWB shall submit declarations so attesting accompanied by proposed orders; upon receipt of the declarations, the Court will grant stay relief under

§ 362(d)(2) without further notice or hearing. PB and EWB's requests for stay relief under § 362(d)(1) and (d)(4) are **DENIED**.

The Court will enter an order consistent with this Memorandum of Decision.

###

Date: April 8, 2022

Ernest M. Robles
United States Bankruptcy Judge